UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHEAL NIKIFORUK and
EMILY NIKIFORUK,

        Plaintiffs,

v.

CITIMORTGAGE, INC., ABN AMRO
MORTGAGE GROUP, INC., JOHN DOES
(Investors, Assigns, and others), JANE DOES
(Investors, Assigns, and others).

        Defendants.

                                         /

Case No. 11-10815

District Judge Nancy G. Edmunds

Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Before the Court is Defendants Citimortgage, Inc. and ABN Amro Mortgage Group, Inc.'s Motion to Dismiss [Doc. #10], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons that follow, I recommend that the motion be GRANTED as to all claims, dismissing these Defendants WITH PREJUDICE.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed suit in this Court on February 28, 2011, alleging violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*.("RESPA"), the Fair Debt Collections Practices Act, 15 U.S.C. 1692 *et seq*. ("FDCPA"), and a number of state law claims.

Proceeding *pro se,* Plaintiffs have filed a complaint containing 1,384 paragraphs. At times, the Complaint veers off into a recitation of statutes or secondary sources they

believe are pertinent to the action. The Complaint also repeats certain factual and legal allegations multiple times. Construing these claims liberally[1], a synopsis of the Complaint is provided as follows.

In June, 2003, Plaintiffs closed on a residential mortgage with ABN Amro Mortgage Group, Inc. ("ABN") for $120,000. *Complaint* at ¶¶25, 30. Defendant CitiMortgage, Inc. ("CitiMortgage") became the successor in interest to ABN in "early 2007." *Defendants' Brief* at 1. CitiMortgage's December 6, 2010 response to an inquiry by Plaintiff Michael Nikiforuk states that the mortgage was assigned Federal Home Loan Mortgage Corporation ("FHLMC") and that Defendant CitiMortgage was the current servicer of the mortgage. *Defendants' Exhibit C*. The 200-plus page Complaint disputes CitiMortgage's right to collect payments or accept a payoff of the loan balance under the June, 2003 mortgage agreement with ABN.

Although Plaintiffs appear to have been making regular mortgage payments as of the date of the Complaint, they seem to allege that because the mortgage agreement required them to pay ABN, CitiMortgage does not have standing to accept payments. *Complaint* at ¶66. They note that an assignment of the mortgage has not been filed with the Oakland County Register of Deeds. *Id.* at ¶65. They allege that in June, 2010 they attempted to "settle the account" and/or pay off the account but that CitiMortgage was "unable and/or unwilling to facilitate the full repayment of the loan in compliance with the loan contract, note of promise, and mortgage contract." *Id.* at ¶¶85-86.

---

[1] *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

Plaintiffs allege that CitiMortgage's failure to facilitate a settlement calls into question "the validity of the account." *Id.* at ¶87. They allege further that the account has not been "validated" or that CitiMortgage has not otherwise "produced authenticated evidence" or a "verified statement of account" to show that it is entitled to make monetary demands or threaten foreclosure. *Id.* at ¶¶88, 109, 114, 221, 241, 255. Plaintiffs also request that the Court perform a "risk/cost/benefit analysis" to find "who is at risk of being a damaged Party in this matter." *Id.* at ¶¶257-258. They allege that such an analysis would "evidence the true nature of the relationship between all parties . . . in the event of a foreclosure" on their home. *Id.* at ¶262. Plaintiffs assert that they are entitled to know whether CitiMortgage would "make[] more money" if they foreclose on their home rather than accept a payoff. *Id.* at ¶265. They allege that in violation of RESPA, CitiMortgage has failed to respond to their requests for "clarification" *Id.* at ¶274.

Plaintiffs also assert that CitiMortgage violated the FDCPA by failing to inform them that it was a "debt collector" before December, 2010. *Id.* at ¶287. They note that none of CitiMortgage's correspondence to them stated that the servicer was a "debt collector." *Id.* at ¶287. They allege that CitiMortgage was unresponsive to their October 8, 2010 request for validation of the debt. *Id.* at ¶295. Plaintiffs note that "it appears . . . Defendant CitiMortgage, Inc. would accuse Plaintiffs of defaulting on the account and become aggressive towards them if they were to stop relinquishing their money." *Id.* at ¶297. They allege that CitiMortgage also violated the FDCPA by making multiple false or misleading representations and engaging in unfair practices. *Id.* at ¶¶301-308. They also allege that CitiMortgage is a "third party interloper" to the mortgage contract. *Id.* at ¶¶1246-1265.

Plaintiffs allege further that ABN breached the original mortgage agreement. *Id.* at ¶¶523-537. They also allege that ABN employed fraudulent methods in procuring their

assent to the mortgage agreement and that the loan contract "was void from the beginning." *Id.* at ¶¶559-639. They claim that ABN fraudulently altered the mortgage document and/or promissory note after Plaintiff's had signed it. *Id.* at ¶¶975-981. They assert that the mortgage is thus unenforceable against them. *Id.* at ¶558. They allege that Defendants have become unjustly enriched at Plaintiff's expense. *Id.* at ¶635. They allege that they have been "damaged" because they were forced to make payments on a fraudulent loan. *Id.* at ¶¶632, 1008. They allege that in paying on the "fraudulent" loan, they "often deny themselves food, medicine, clothing and the pleasures of life in order to 'pay the Mortgage.'" *Id.* at ¶1009. They also cite the Uniform Commercial Code ("UCC") in support of the proposition that the mortgage agreement is void. *Id.* at ¶913-974.

As a result of Defendants' alleged actions, Plaintiffs assert that they are entitled to actual, statutory and punitive damages and that the mortgage lien on their home be extinguished. *Id.* at ¶235.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In assessing the complaint's sufficiency, the court must first determine whether a

complaint contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S.662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."

129 S.Ct. at 1950 (internal citations omitted).

### III. ANALYSIS

As an initial matter, the crux of Plaintiffs' various claims against CitiMortgage appear to be premised on the loan servicer's "failure" to respond to their July through October, 2010 requests for information.

In June, 2010, Plaintiffs apparently sought to either negotiate terms for the release of the lien or pay off the loan. *Complaint, Exhibit B-1*. They sent the request to CitiMortgage at a Columbus, Ohio address. *Id.* Plaintiffs received a response on July 22. 2010, stating that the payoff was $75,298.65 along with "payoff remittance instructions." *Id., C-1*. However, their continued requests for information, made between July 14, and October 8, 2010 were directed to CitiMortgage's "Research Services" at P.O. Box 660065, Dallas, Texas.

Defendants point out that the Dallas, Texas post office box, while a CitiMortgage address, was not the correct address for such inquiries, noting that the requests ought to have

been directed to a Gaithersburg, Maryland address. *Defendants' Brief,* fn 7. "If a borrower does not send the qualified written request to the proper address, he cannot create a triable issue of material fact that the servicer's RESPA obligations were triggered." *Stein v. National City Bank,* 2010 WL 5559528, *5 (D.Minn.2010)(citing *Bally v. Homeside Lending, Inc.,* 2005 WL 2250856, at *2 (N. D.Ill. 2005)). Thus, a July 30, 2010 demand, *Complaint, B-3*; requests in August through October, 2010 for "a certified copy of the Pooling and Servicing agreement"; a request a chain of title on the mortgage (including an October 7, 2010 inquiry entitled "Qualified Written Request for Documents under the Real Estate Settlement Procedures Act"); and an October 8, 2010 "Debt Validation Request under the Fair Debt Collections Practices Act" were all misdirected to the Dallas location. *Id., Exhibit B4-8*. Defendants' position that the July through October requests were not processed because they were misaddressed is supported by the fact that CitiMortgage timely responded to a November 15, 2010 request which Plaintiffs sent to the Gaithersburg, Maryland address.[2] *Id., Exhibit B-9*; *Defendants' Exhibit C*.

### A. Allegations Pertaining to the June 6, 2003 Mortgage Closing are Time Barred.

Present Defendants argue correctly that all allegations relating to the underlying mortgage transaction of June 6, 2003 are untimely. *Defendant's Brief* at 4-5. Even assuming that the liberally construed Complaint stated a cause of action under RESPA in the events surrounding the mortgage closing, allegations of impropriety occurring at the time of the

---

[2] Further, a search of the CitiMortgage website confirms that "Qualified Written Requests" should be directed to the "Customer Research Team" at a Gaithersburg, Maryland address. http://www. citicorptrustbank.com/CTBRetail/view FAQDetails.do?categoryId=accountinformation.

June, 2003 closing are clearly time barred by RESPA's three-year statute of limitation. 12 U.S.C. § 2614. The breach of contract claims pertaining to the June, 2003 consummation of the loan are also barred by Michigan's six-year statute of limitations. M.C.L. § 600.5807(8). Likewise, the various claims of fraudulent misrepresentation are subject to Michigan's six-year statute of limitations. *Boyle v. General Motors Corp.,* 468 Mich. 226, 230, 661 N.W.2d 557 (2003); M.C.L. § 600.5813. While the merits (or lack thereof) of the fraud claim are discussed below in regard to more recent events, the statute of limitations provides independent grounds for dismissal of the allegations pertaining to the mortgage closing.

### B. The Remaining Claims of Fraud are Subject to Dismissal

Defendants contend next that Plaintiffs have failed to state a claim of fraud. *Defendants' Brief* at 5-7. As a secondary matter, they argue that Plaintiffs have failed plead the fraud claims with sufficient particularity to satisfy the heightened requirements of Fed. R. Civ. P. 9(b). *Id.* at 6.

A claim of fraud must allege the following: "(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Hi-Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976). "The absence of any one" of these elements "is fatal to a recovery." *Id.* (Internal citations omitted). Further, a claim of fraud "must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). The claimant must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of

the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993). "The Rule's purpose is to alert defendants 'as to the particulars of their alleged misconduct' so that they may respond." *Kanouno v. SunTrust Mortg., Inc.,* 2011 WL 5984023, *4 (E.D.Mich.2011)(Rosen, J.)(citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir.2007)).

The Court is unable to discern how either Defendant's actions constituted fraud. Construed in the light most favorable to Plaintiffs, the Complaint alleges that ABN falsely stated that it was funding the loan when in fact, another entity funded the loan and as a result, Plaintiffs did not receive consideration under the June, 2003 agreement. Aside from the fact that claims surrounding the June, 2003 events are time barred, Defendants point out that as a result of the mortgage agreement, Plaintiffs have resided at the mortgaged property for eight years. *Defendants' Brief* at 8.

Although the Complaint is punctuated with allegations of "fraud," Plaintiffs have failed to state any cognizable claim against Defendants, much less the elements of a fraud claim. Plaintiffs contend that CitiMortgage has been fraudulently accepting their mortgage payments despite the fact that the servicer does not have standing to collect payments under the original mortgage agreement. However, paragraph 20 of the June, 2003 mortgage agreement *Sale of Note; Change of Loan Servicer;* states as follows:

> "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payment due under the Note and Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument , and Applicable law."

*Defendant's Exhibit B* at ¶20. Moreover, Plaintiffs do not claim that they were not informed of the assignment or how the assignment prejudiced their rights under the mortgage

agreement.  They do not allege that the terms of the loan were changed as a result of the assignment.  They continued to make payments to CitiMorgage without protest, through the first half of 2010.

Plaintiffs also argue that because CitiMortgage's interest has not been recorded, the servicer lacks standing to collect payments or accept a payoff of the loan.  *Complaint* at ¶65.  This position is without merit.  "[U]nrecorded interests '[do] not create a valid objection on behalf of the mortgagor if the mortgagor [is] unaffected by those interests."  *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC,* 399 Fed.Appx. 97, 101-103, 2010 WL 4275305, *3  (6th Cir. 2010)(citing *Arnold v. DMR Financial Services, Inc.,* 448 Mich. 671, 532 N.W.2d 852, 865 (1995)).  Again, Plaintiffs do not allege that their obligations under the agreement have been modified by the assignment.  Moreover, even assuming that the current absence of a recorded assignment barred CitiMortgage from foreclosing on the loan, Plaintiffs were current with their mortgage payments at the time they filed suit.  Although they allege that CitiMortgage is not entitled to threaten foreclosure, they do not allege that CitiMortgage *has* threatened foreclosure, much less foreclosed on their home or even begun foreclosure proceedings.  Given that Plaintiffs have not otherwise stated a cognizable claim against CitiMortgage, the argument that they are entitled to damages or injunctive relief on the issue of foreclosure is not ripe for adjudication. For identical reasons, the request for a "risk/cost/benefit analysis" (based on the theory that CitiMortgage would stand to gain more in a foreclosure action than in accepting a payoff from Plaintiffs) is premature at best.

### C. Plaintiffs Fail to State a Claim Under Either RESPA or FDCPA.

#### 1. RESPA

In their response to the present motion, Plaintiffs deny that their claims against CitiMortgage are "RESPA" claims, *Plaintiffs' Response* at 14, although the Complaint alleges that CitiMortgage failed to give them an adequate response to their October 7, 2010 and November 15, 2010 inquiries entitled "Qualified Written Request for Documents under the Real Estate Settlement Procedures Act, codified as Section 2605(e) of Title 12 of the United States Code." *Complaint, Exhibit B-7, 9.* Plaintiffs argue instead that CitiMortgage had "a contractual obligation to correspond with Plaintiffs regarding the Note and Mortgage . . ." *Plaintiff's Response* at 14. Because Plaintiffs do not explain how CitiMortgage breached any contractual obligations, this claim is unavailing.

Further, the Complaint fails to state a claim under RESPA. Under RESPA, a Qualified Written Request ("QWR") by a borrower "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii). The loan servicer has 20 days (excluding holidays and weekends) to acknowledge a QWR and 60 days (excluding holidays and weekends) to provide the borrower with a "written explanation or clarification" of the requested information and the name and contact information of an individual or department able to provide additional assistance.[3] § 2605(e)(2)(A), (B)(ii).

---

[3]

"The Mortgage Reform and Anti-Predatory Lending Act modifies the time limit of this section by "striking 20 days and inserting 5 days." *Solan v. Everhome Mortg. Co.,* 2011 WL 456013, *2, fn 2 (S.D.Cal.2011)(citing Pub.L. No. 111-203, § 1463, 124 Stat 1376 (July 21, 2010)). However, there is some question as to the effective date of this provision. *Id.* at fn. 1. In any case, Plaintiffs' failure to show damages as a result of the contemplated RESPA renders the issue moot.

As discussed above, CitiMortgage's initial non-responsiveness to July through October, 2010 requests for information does not violate RESPA because the inquiries were sent to the wrong address. *See Stein, supra,* at *5. However, CitiMortgage responded to Plaintiffs' November 15, 2010 inquiry (properly sent to the Gaithersburg, Maryland address) within the 20-day statutory deadline for acknowledging inquiries. *Defendants' Exhibit C.* The response, confirming the assignment to FHLMC, stated that CitiMortgage was currently servicing the loan and was thus authorized to collect payments. *Id.* CitiMortgage also included copies of the promissory note, mortgage, loan application, and payment history. *Id.*

CitiMortgage's response did not include "GAAP compliant Promissory Note and transaction account records," and various SEC and IRS filings requested by Plaintiffs. However, the correspondence (apparently conceding that certain items on Plaintiffs long list of requests were unavailable) stated that "[m]any of the items you have requested have already been provided to you either at loan origination or throughout the servicing of your mortgage." *Id.* Nonetheless, along with the promissory note, mortgage, loan application, and payment history, Plaintiffs' were provided with a customer service phone number and website address for additional inquiries. *Id.* "Contrary to [P]laintiffs' assumption," RESPA "does not require a servicer to answer endless interrogatories propounded by a borrower." *Golliday v. Chase Home Finance*, LLC 2011 WL 4352554, *10 (W.D.Mich.2011). "Rather, the Act requires only that the servicer make appropriate correction to anything found in error, or provide a statement of the reasons why the servicer believes the account is correct or why the requested information is not available." *Id.*

Even assuming that some aspect of the CitiMortgage's response was deficient,

Plaintiffs have not adequately pled damages as a result of the "inadequate" RESPA response. Plaintiffs allege generally that the fact that they continue to make mortgage payments on an allegedly "void" mortgage has deprived them of both necessities and "the pleasures of life." *Complaint* at ¶1009. However, as discussed below, they do not allege that their rights or duties under the original agreement have been altered by either Defendant. Thus, they are no more deprived than to the extent required to hold up their end of the original mortgage agreement. If a "necessity of life" is a house to live in, they have certainly received, and continue to receive that benefit. As such, they have "completely failed to allege any causal link between Defendant's allegedly inadequate response to [the Qualified Written Requests] and any actual damages suffered." *Mekani v. Homecomings Financial,* LLC 752 F.Supp.2d 785, 795-796 (E.D.Mich.2010); *Byrd v. Homecomings Financial Network,* 407 F.Supp.2d 937, 945–946 (N.D.Ill.2005).

### 2. FDCPA

Defendants argue next that they are not "debt collectors" as defined by the FDCPA. *Defendants' Brief* at 12-13.

I agree. Assuming that CitiMortgage's activities regarding the loan at issue could be described as "debt collecting," it was not alleged to be collecting the debt of another, but rather, asserting its own rights as the loan servicer. § 1692a(6). Accordingly, it is not subject to liability under the FDCPA. The fact that CitiMortgage serviced the loan, with nothing more, does not subject it to liability under the FDCPA. *Bridge v. Ocwen Federal Bank,* 669 F.Supp.2d 853, 858 (N.D.Ohio 2009) (citing *Montgomery, supra* ). Even assuming that under certain circumstances, a loan servicer could fall within the definition of a "debt collector" under the Act, as of the filing of the lawsuit, the loan had not been in default. Thus,

CitiMortgage would fall outside the definition of "debt collector" under the Act. § 1692a(6)(F)(iii); *Complaint, Exhibit B-15.*

In addition, even assuming that CitiMortgage were a "debt collector," the information provided to Plaintiffs on December 6, 2010, including the note, mortgage, application, payment history, and the owner and servicer of the mortgage is more than ample to "verify" under the statute. *Defendants' Exhibit C.* "[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt.'" *Rudek v. Frederick J. Hanna & Associates,* P.C.2009 WL 385804, *2 (E.D.Tenn.2009) (citing *Chaudhry v. Gallerizzo,* 174 F.3d 394, 406 (4th Cir.1999)). "[V]erification is only intended to 'eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.' " *Id.* at *3 (citing *Chaudhry,* at 406). " 'There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.' " *Id.* Likewise, allegations that CitiMortgage failed to respond to requests to produce "authenticated evidence" or a "verified statement of account" the loan does not state a cause of action under the FDCPA.

### D. Plaintiffs' Remaining Claims Fail as a Matter of Law

Plaintiffs claim of unjust enrichment fails in light of the written mortgage agreement. "[A]n unjust enrichment claim cannot be maintained where there is an express contract that covers the same matter." *Heaton v. Bank of America Corp.*, 2011 WL 3112325, *5 (E.D.Mich.2011)(Cohn, J.)(citing *Kammer Asphalt Paving v. East China Township Schools*, 443 Mich. 176, 504 N.W.2d 635 (1993). "[A]n action for unjust enrichment seeks to an imply a contract, which is not necessary or proper is an express contract covering the same

matter exists." *Id.* Moreover, Plaintiffs have not shown that the terms of the mortgage agreement have changed from the express terms of the original agreement or how Defendants have been unjustly enriched at their expense.

The claim for "recoupment" is also unavailable to Plaintiffs. The remedy of recoupment refers to a *defendant's* right "'to cut down the plaintiff's demand, either because the plaintiff has not complied with some cross obligation of the contract on which he or she sues or because the plaintiff has violated some legal duty in the making or performance of that contract.'" *Mudge v. Macomb County,* 458 Mich. 87, 106-107, 580 N.W.2d 845, 855 (1998)(citing 20 Am.Jur.2d, Counterclaim, Recoupment, § 5, p. 231). Plaintiffs' request for the "Separation of the Promissory Note from Mortgage" does not state a cognizable claim for relief.

Finally, as noted by Defendants, Plaintiffs' claims that CitiMortgage is a "third party interloper," appears to allege tortious interference by CitiMortgage in the underlying mortgage agreement. "A tortious interference claim exists where there is '(1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant.'" *Kevelighan v. Trott & Trott*, P.C. 771 F.Supp.2d 763, 779 (E.D.Mich.,2010)(Duggan, J.)(citing *Mahrle v. Danke,* 216 Mich.App. 343, 350, 549 N.W.2d 56, 60 (1996)). While CitiMortgage would be a third party to the original agreement, Plaintiffs have not made a cognizable claim of a breach by the loan servicer. Thus, this claim is dismissible as well.

Because Plaintiffs' legal claims are subject to dismissal, the claims for injunctive relief should also be denied.

### IV. CONCLUSION

For these reasons, I recommend that the Defendants' motion to dismiss [Doc. #10]

be GRANTED, dismissing all claims against these Defendants WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Date: December 27, 2011

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on December 27, 2011.

| | |
|---|---|
| Michael Nikiforuk and Emily Nikiforuk | s/Johnetta M. Curry-Williams |
| 326 Englewood Ave | Case Manager |
| Royal Oak, MI 48073-2630 | |

2:11-cv-10815-NGE-RSW   Doc # 22   Filed 12/27/11   Pg 16 of 16   Pg ID 1116